The STATE of Ohio, Appellant,

v.

BROWN, Appellee.

[Cite as *State v. Brown,* 170 Ohio App.3d 235, 2007-Ohio-179.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21546.

Decided Jan. 19, 2007.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Jon C. Marshall, Assistant Prosecuting Attorney, for appellant.

Charles W. Slicer III, for appellee.

GRADY, Judge.

{¶ 1} The state appeals from the trial court's March 14, 2006 order sustaining the defendant's motion to dismiss.

{¶ 2} On March 26, 2005, the defendant was arrested by Officer William Garlow of the Vandalia Police Department on a charge of operating a vehicle while under the influence of alcohol ("OVI"). The defendant was transported to the county jail, where Officer Garlow performed a pat-down search of the defendant and discovered a package of cigarettes in the defendant's pocket containing a crack pipe and a small piece of suspected crack cocaine. The suspected cocaine was sent to the Miami Valley Crime Laboratory for analysis.

{¶ 3} On May 17, 2005, the defendant was indicted for possession of cocaine in an amount less than one gram, in violation of R.C. 2925.11(A), a felony of the fifth degree. He entered a plea of not guilty. The defendant filed a motion to suppress evidence on June 3, 2005, which was overruled by the trial court on July 8, 2005. The trial court found that there was probable cause for Officer Garlow to perform the stop that resulted in the defendant's arrest and the subsequent seizure of contraband.

{¶ 4} The defendant was indicted by the grand jury in a second case involving one count of aggravated robbery and two counts of felonious assault. New

counsel was appointed on July 26, 2005, to represent the defendant in the two cases.

{¶ 5} In December 2005, the defendant's counsel was advised by the state that the suspected crack found by Officer Garlow during his pat down of the defendant had been destroyed. On December 15, 2005, the defendant filed a motion to dismiss the possession-of-cocaine charge based on the state's failure to preserve the evidence of the crack cocaine that the defendant had allegedly possessed.

{¶ 6} On January 26, 2006, the trial court held a hearing on the defendant's motion to dismiss. Both parties presented arguments at this hearing. On March 14, 2006, the trial court sustained the defendant's motion to dismiss on the ground that the defendant's due process rights to confront the evidence against him were violated by the state's destruction of that evidence.

{¶ 7} The state filed a timely notice of appeal.

*ASSIGNMENT OF ERROR*

{¶ 8} "Because Brown never demonstrated bad faith on behalf of the state, the trial court committed reversible error when it granted Brown's motion to dismiss."

{¶ 9} The trial court sustained the defendant's motion to dismiss, stating: "More than merely an evidentiary question is presented in this context. The Court finds that Defendant's basic constitutional due process rights to confront the evidence against him has been violated." The state argues that the trial court erred in granting the defendant's motion to dismiss without first finding either that the evidence destroyed was inherently exculpatory or that the state had destroyed the evidence in bad faith.

{¶ 10} The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from conviction where the state fails to preserve materially exculpatory evidence or, acting in bad faith, it destroys potentially useful evidence. *Arizona v. Youngblood* (1988), 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281; *State v. Bolden,* Montgomery App. No. 19943, 2004-Ohio-2315, 2004 WL 1043317, ¶ 51.

{¶ 11} To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta* (1984), 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413.

{¶ 12} When evidence is only potentially exculpatory, the destruction of such evidence does not deprive an accused of due process unless the police acted

in bad faith when destroying the evidence. *State v. Miller,* 161 Ohio App.3d 145, 2005-Ohio-2516, 829 N.E.2d 751, ¶ 12. " 'The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of the fraud. It also embraces actual intent to mislead or deceive another." ' " *State v. Smith,* Montgomery App. No. 20247, 2005-Ohio-1374, 2005 WL 678933, ¶ 7, quoting *State v. Franklin,* Montgomery App. No. 19041, 2002-Ohio-2370, 2002 WL 1000415, ¶ 47, quoting *State v. Buhrman* (Sept. 12, 1997), Greene App. No. 96 CA 145, 1997 WL 566154.

{¶ 13} On this record, the evidence that was destroyed, the alleged crack cocaine, is not by its nature evidence that would be inherently exculpatory in relation to the possession-of-cocaine offense alleged. In other words, there is no basis to conclude that it was not crack cocaine. To the contrary, it appears that the state obtained a laboratory report showing that the substance seized from the pocket of the defendant's shirt was cocaine. Such a report is prima facie evidence of the offense alleged. R.C. 2925.51(A). The defendant had not filed a motion for independent testing pursuant to R.C. 2925.51(E) before the evidence was destroyed. Therefore, the state's destruction of the evidence did not deprive the defendant of the right that that section confers on him.

{¶ 14} Because the destroyed evidence was not inherently exculpatory, the defendant was entitled to dismissal only if it was potentially exculpatory and was destroyed in bad faith. Regarding the probative value of the evidence to his defense, the defendant's counsel argued at the hearing on the motion to suppress, "The first question I have as defense counsel and the first thing I want to see when the jury trial starts is what the evidence looked like and how I'm going to argue with the jury and not just argue with the jury but cross examine the officer as to his finding of those drugs. We know how he found them from his report. We know how he found them from his testimony. So we have that.

{¶ 15} "And then, of course, the officer's going to be testifying at trial; but I don't have the evidence itself. How we do we know whether it looks as he described? How do we know whether, you know, it was even visible according to the way he testified. This is all part of my client's inherent right to cross examine witnesses against him. I can't cross examine those witnesses when I don't have the evidence in front of me."

{¶ 16} "* * *

{¶ 17} "So not just for the reasons that it's not available for independent testing, but what stands out the most for me is all my cross examination would be based on what that baggie looked like, what kind of package it was in, what the

drugs looked like, and whether they were, in fact, truly visible or were found as a result of possible an illegal search. We didn't get that opportunity and don't have that opportunity."

{¶ 18} The defendant's contentions go to whether the destroyed evidence was potentially exculpatory. However, none of the matters he raised concerning what the evidence looked like or how it was found are themselves material to the defendant's rights or to his guilt or innocence.

{¶ 19} The evidence was seized in a search incident to the defendant's arrest on an OVI charge, a search that the officer was authorized by law to perform. *Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. Therefore, and unlike evidence seized in the course of a *Terry* stop, neither its appearance nor, absent a claim of improper methods, the way in which the evidence was found in the course of the search implicates any right of the defendant that the Fourth Amendment protects.

{¶ 20} A laboratory report that satisfies the requirements of R.C. 2925.51(A) is "prima facie evidence of the content, identity, and the weight or existence and number of unit dosages of the substance" tested. Id. It is the state's burden at trial to authenticate such a report. Methodology and chain of custody are material to that burden. What the evidence looked like and how it was found in the course of a search are not.

{¶ 21} Ironically, the most significant exculpatory feature of the destroyed evidence is the very fact of its destruction. The state's error in destroying the evidence, which denies the jury an opportunity to see what it actually looks like, preponderates in the defendant's favor. Whether the error is effectively exploited to his benefit can be resolved only by a trial of the possession-of-cocaine offense with which the defendant was charged.

{¶ 22} The trial court was not required to determine whether the evidence was destroyed in bad faith because it was not potentially exculpatory, and the trial court erred in granting the defendant's motion to dismiss when the evidence was neither exculpatory nor potentially exculpatory. The assignment of error is sustained. The judgment of the trial court will be reversed and the cause remanded for further proceedings.

Judgment reversed,
and cause remanded.

BROGAN and DONOVAN, JJ., concur.